

Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 6/19/2015

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE: )
 )
PATRICIA ANN BROADRICK, )
 ) Case. No. 3:14-bk-00672
   Debtor. ) Chapter 13
 ) Judge Randal S. Mashburn
PATRICIA ANN BROADRICK )
 )
   Plaintiff, )
v. ) Adv. Proc. No. 3:14-ap-90357
 )
LVNV FUNDING LLC and )
RESURGENT CAPITAL SERVICES L.P., )
 )
   Defendants. )

## MEMORANDUM OPINION

Filing a proof of claim in bankruptcy court is not automatically a violation of the Fair Debt Collection Practices Act ("FDCPA") when the underlying debt cannot be collected because of an applicable statute of limitations. However, a so-called "stale" proof of claim is not necessarily protected from FDCPA exposure merely because it arises in the bankruptcy setting. Specific facts matter. Based on the stipulated facts of this case, a violation of the FDCPA is not apparent.

Courts are divided whether FDCPA liability is triggered when a creditor files a "stale claim" — one based on a debt that would not be enforceable under non-bankruptcy law because of the statute of limitations. Some courts have found that filing a stale claim is inherently "unfair" or "deceptive" and violates the FDCPA as a matter of law. Other courts are equally sure that the effect of

1

the FDCPA stops at the door to the Bankruptcy court, precluding FDCPA liability in those circumstances.

A "cardinal principle" of statutory construction is that when there are two federal laws on the same subject, "the rule is to give effect to both." *U.S. v. Borden Co.*, 308 U.S. 188, 198 (1939). Many courts discussing the interaction of the Bankruptcy Code and the FDCPA have focused on whether one statute preempts or displaces the other on the issue of stale claims. However, it is possible to harmonize the two – or at least to make both function without doing extensive harm to either.

Avoiding overt friction between the two laws is accomplished by not using an overly expansive interpretation of the FDCPA in the special context of stale claims in bankruptcy. The FDCPA should not be read to usurp the claims allowance process in bankruptcy or to render bankruptcy provisions illogical. However, it is not necessary for the Bankruptcy Code to displace or preclude the FDCPA in every instance when a prohibited debt collection practice happens in a bankruptcy case.

An unnecessarily expansive reading of the FDCPA finds a violation based on the mere filing of a stale proof of claim without regard to the accuracy of the claim, the status of the underlying debt under nonbankruptcy law, or other facts. Such a liberal interpretation does not mesh easily with the structure of the Bankruptcy Code that expressly addresses unenforceable claims and provides remedies for those situations.

On the other hand, harmonizing the two statutes does not dictate that the FDCPA be totally removed from the toolbox of consumer protections when a debtor files bankruptcy. There may be numerous situations where the FDCPA has implications for actions taken by a creditor in the bankruptcy setting, but, with regard to stale debts, the FDCPA does not apply when a creditor merely (a) files an accurate proof of claim in a bankruptcy case, (b)

when the proof of claim includes all the required information including the timing of the debt, (c) the applicable statute of limitations is one that does not extinguish the right to collect the debt but merely limits the remedies, and (d) no legal impediment to collection or factual circumstances exist that would invoke the FDCPA other than merely the applicability of a statute of limitations.

This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001, and this Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding. The following constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## UNDISPUTED FACTS

On January 30, 2014, Patricia Ann Broadrick filed a Chapter 13 petition. (Stip. of Facts, at ¶ 1.). On June 9, 2014, proof of claim number 13 (the "Capital One Claim") was filed in Broadrick's bankruptcy case. (*Id.* at ¶ 5.) The Capital One Claim asserts a debt in the amount of $797.30 arising from an obligation of Broadrick to Capital One Bank (USA), N.A. (*Id.* at ¶ 6.). The Capital One Claim provides that the last payment date and last transaction date were August 30, 2002 (Stip. of Facts, ¶ 8). Broadrick did not list the debt referenced in the Broadrick Claim (Stip. Of Facts, ¶ 9). On August 20, 2014, Broadrick filed a complaint (the "Broadrick Complaint"), objecting to the Capital One Claim and alleging violations of the FDCPA. (*Broadrick v. LVNV Funding, LLC (In re Broadrick)*, No. 14-90357 (Bankr. M.D. Tenn. Aug. 20, 2014). The parties agreed to proceed on cross-motions for summary judgment.[1]

---

[1] *Broadrick* (14-90357) is the lead adversary proceeding of all proceedings that were consolidated by agreement for purposes of discovery, administration, and trial. All consolidated adversary proceedings are governed by the *Broadrick* Pretrial Order in which all parties consented to this Court's jurisdiction. All filings were directed to be filed in the *Broadrick* adversary and the Court enters this Memorandum and Order in 14-90357 for all consolidated adversary proceedings. The undisputed facts of the other adversary proceedings

Case 3:14-ap-90492   Doc 12   Filed 06/19/15   Entered 06/19/15 11:15:18   Desc Main
Document     Page 3 of 27

# DISCUSSION

## A. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Federal Rule of Bankruptcy Procedure 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy,* 283 F.3d 761, 769 (6th Cir. 2002) quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, (1986).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, (1986) quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, (1970). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson,* 477 U.S. at 250–52. This standard does not change when both parties move for summary judgment. *Taft Broad. Co. v. U.S.,* 929 F.2d 240, 248 (6th Cir. 1991) "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. U.S.,* 20 F.3d 222, 224 (6th Cir. 1994). The Court finds no material facts are in dispute which would prevent this Court from ruling, at least in part, on the cross-motions for summary judgment.

---

do not differ in any relevant way for purposes of summary judgment and are briefly summarized in footnote 10.

## B. The FDCPA Generally

Congress passed the FDCPA in 1977 with the stated purposes of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 445 (6th Cir. 2014) (purpose is to eliminate abusive debt collection practices by debt collectors.).[2] In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

The FDCPA is a consumer protection statute that "imposes open-ended prohibitions on, *inter alia,* false, deceptive, or unfair" debt-collection practices. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1257 (11th Cir. 2014) quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 587 (2010) (quotation marks and citations omitted). The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." *Stratton*, 770 F.3d at 445. The Sixth Circuit recently discussed the breadth of the FDCPA:

---

[2] 15 U.S.C. § 1692(e) provides in relevant part:

**§ 1692e. False or misleading representations**

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

> (2) The false representation of--

> (A) the character, amount, or legal status of any debt…

The Fair Debt Collection Practices Act is an extraordinarily broad statute" and must be construed accordingly….. The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent … and does not have to have suffered actual damages. … Structured as such, the FDCPA functions both to protect the individual debtor and advance the declared federal interest in "eliminat[ing] abusive debt collection practices. … Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief.

*Id.* at 448-49 (citations omitted). The Act protects "all consumers," the "shrewd" as well as the "gullible," *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (internal quotation marks omitted), from practices that would mislead the "reasonable unsophisticated consumer," one with some level of understanding and one willing to read the document with some care. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 327 (6th Cir. 2012); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015).

The FDCPA prohibits "false, deceptive, or misleading representations or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and "unfair practices"—"unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.[3] *Stratton*, at 450. The applicable sections provide a list of unlawful conduct without limiting the general application of each section's broad prohibition of "false or misleading representations" and "unfair practices." *Id.* §§ 1692e, 1692f. "Thus section 1692e forbids both '[t]he

---

[3] 15 U.S.C. § 1692f provides in relevant part:

**1692f. Unfair practices**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

false representation of ... the character, amount, or legal status of any debt,' § 1692e(2), and the 'threat to take any action that cannot legally be taken,' § 1692e(5), and section 1692f(1) prohibits '[t]he collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law.'" *Stratton*, at 450.

To enforce the FDCPA's prohibitions, Congress equipped consumer debtors with a private right of action, rendering "debt collectors who violate the Act liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs." *Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1270 (11ᵗʰ Cir. 2011) citing 15 U.S.C. § 1692k(a); *Crawford*, 758 F.3d at 1258.

## C. FDCPA's Interaction with the Bankruptcy Code

Two circuit courts of appeal have held that the Bankruptcy Code displaces or precludes the FDCPA, at least in part, in bankruptcy. *See Simmons v. Roundup Funding, LLC,* 622 F.3d 93, 96 (2ᵈ Cir. 2010); and *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 510 (9ᵗʰ Cir. 2002). The Eleventh Circuit has come down on the other side. *Crawford v. LVNV Funding LLC,* 758 F.3d 1254 (11ᵗʰ Cir. 2014).

Two other circuits have said that the FDCPA can apply in a bankruptcy setting, but they were not dealing with a proof of claim issue. *See Simon v. FIA Card Ser., N.A.,* 732 F.3d 259, 271–74 (3ʳᵈ Cir. 2013);[4] and *Randolph v.*

---

[4] The Third Circuit's decision collects lower court decisions addressing the various rulings regarding the relationship between the FDCPA and the Bankruptcy Code. The Court reproduces those cases here, and adds some decided since *Simon*.

A sampling of decisions finding that FDCPA claims were not precluded by the Bankruptcy Code include: *Patrick v. Quantum3 Group, LLC,* 2015 WL 627216 (S.D. Ind., 2015) (agreeing with *Crawford*); *In re LaGrone*, 525 B.R. 419 (Bankr. N.D. Ill., 2015) (filing a proof of claim in bankruptcy on a stale debt is actionable under FDCPA); *Gamble v. Fradkin & Weber, P.A.,* 846 F. Supp. 2d377, 381–83 (D. Md. 2012) (postdischarge collection); *Rios v. Bakalar & Assocs., P.A.,* 795 F. Supp. 2d1368, 1369–70 (S.D. Fla. 2011) (postdischarge collection); *Clark v. Brumbaugh & Quandahl, P.C., LLO,* 731 F. Supp. 2d915, 919–21 (D. Neb. 2010) (automatic stay and discharge injunction violations); *Kline v. Mortg. Elec. Sec. Sys.,* 659 F. Supp. 2d940, 949–51 (S.D. Ohio 2009) (inflated proof of claim); *Bacelli v. MFP, Inc.,* 729 F.

*IMBS, Inc.,* 368 F.3d 726, 730–33 (7th Cir. 2004). (*Simon* focused on subpoenas, collection letters, and Bankruptcy Rule 2004 exam procedures;

---

Supp. 2d1328, 1336–37 (M.D. Fla. 2010) (automatic stay and discharge injunction violations); *Evans v. Midland Funding LLC,* 574 F. Supp. 2d808, 816–17 (S.D. Ohio 2008) (postdischarge collection); *Dougherty v. Wells Fargo Home Loans, Inc.,* 425 F. Supp. 2d599, 604–06 (E.D. Pa. 2006) (postdischarge collection); *Marshall v. PNC Bank, N.A. (In re Marshall),* 491 B.R. 217, 224–27 (Bankr. S.D. Ohio 2012) (postdischarge collection); *Atwood v. GE Money Bank (In re Atwood),* 452 B.R. 249, 251–53 (Bankr. D.N.M. 2011) (automatic stay violation); *Price v. Am.'s Servicing Co. (In re Price),* 403 B.R. 775, 790 n.14 (Bankr. E.D. Ark. 2009) (inflated proof of claim); *Gunter v. Columbus Check Cashiers, Inc. (In re Gunter),* 334 B.R. 900, 903–05 (Bankr. S.D. Ohio 2005) (postdischarge collection); and *Molloy v. Primus Auto. Fin. Servs.,* 247 B.R. 804, 820–21 (C.D. Cal. 2000) (postdischarge collection).

A sampling of published decisions finding that FDCPA claims were precluded by the Bankruptcy Code (and the majority) include *In re Dunaway,* __ B.R. ___, 2015 WL 2414866 (Bankr. W.D. Mo. May 19. 2015) (a proof of claim that accurately reflects information on the debt, including the date of last payment, date the account was charged off by the original creditor and the last transaction date is not false, deceptive or misleading on its face and the argument that filing a proof of claim on a time-barred debt mischaracterizes the legal status of the debt also fails because a debt that is legally unenforceable or uncollectible is not extinguished; the money is still owed and only the creditor's remedies are regulated.); *Donaldson v. LVNV Funding, LLC,* __F. Supp.3d __, 2015 WL 1539607 (S.D. Ind. April 7, 2015) (same); *Torres v. Calvary SPVI, LLC* ___ B.R. ___, 2015 WL 1542588 (E.D. Pa. Apr. 7, 2015) (filing time barred proof of claim is not basis for an FDCPA claim); *In re Roman Perez,* 527 B.R. 844 (Bankr. D. P.R. 2015) (FDCPA not available if debtor has remedies in bankruptcy code such as 11 U.S.C. § 362(k)); *In re Ganas,* 513 B.R. 394 (Bankr. E.D. Ca. 2014) (*Jenkins v. Genesis Fin. Solutions (In re Jenkins),* 456 B.R. 236, 240 (Bankr. E.D.N.C. 2011) (proof of claim for time-barred debt); *McMillen v. Syndicated Office Sys., Inc. (In re McMillen),* 440 B.R. 907, 911–13 (Bankr. N.D. Ga. 2010) (inflated proof of claim); *B–Real, LLC v. Rogers (In re Rogers),* 405 B.R. 428, 430–34 (M.D. La. 2009), *rev'g,* 391 B.R. 317, 325–26 (Bankr. M.D. La. 2008) (proof of claim for time-barred debt); *Gilliland v. Capital One Bank (In re Gilliland),* 386 B.R. 622, 623–24 (Bankr. N.D. Miss. 2008) (inflated proof of claim); *Williams v. Asset Acceptance, LLC (In re Williams),* 392 B.R. 882, 885–87 (Bankr. M.D. Fla.2008) (time-barred proof of claim); *Middlebrooks v. Interstate Credit Control, Inc.,* 391 B.R. 434, 436–37 (D. Minn. 2008) (proof of claim for time-barred debt); *Pariseau v. Asset Acceptance, LLC (In re Pariseau),* 395 B.R. 492, 493–94 (Bankr. M.D. Fla. 2008) (false proof of claim); *Rice–Etherly v. Bank One (In re Rice–Etherly),* 336 B.R. 308, 311–13 (Bankr. E.D. Mich. 2006) (inflated proof of claim); *Necci v. Universal Fid. Corp.,* 297 B.R. 376, 379–81 (E.D.N.Y. 2003) (postdischarge collection); *Cooper v. Litton Loan Servicing (In re Cooper),* 253 B.R. 286, 291–92 (Bankr. N.D. Fla. 2000) (inflated proof of claim); and *Gray–Mapp v. Sherman,* 100 F.Supp.2d 810, 813–14 (N.D. Ill.1999) (inflated proof of claim); *see also Jacques v. U.S. Bank N.A. (In re Jacques),* 416 B.R. 63, 74–81 (Bankr. E.D.N.Y. 2009) (proof of claim for time-barred debt); *Wan v. Discover Fin. Servs., Inc.,* 324 B.R. 124, 127 (N.D. Cal. 2005) (failure to follow FDCPA debt-verification procedures). *See also In re Grandberry,* 2013 WL 6979402 (Bankr. M.D. Tenn. Dec. 16, 2013) (J. Harrison) (decided before FDCPA on time-barred claims put at issue, and finding that FDCPA did not apply in bankruptcy where debtor filed proof of claim on creditor's behalf and creditor never amended claim despite filing notice of payment changes because of protections for debtor already present in the Bankruptcy Code).

*Randolph* allowed an FDCPA claim premised on automatic stay violations to proceed holding that the FDCPA and Bankruptcy Code could be enforced at the same time).

The Second Circuit's decision in *Simmons* provides perhaps the most thorough analytical framework at the circuit level of why the FDCPA is displaced by the Bankruptcy Code in the proof of claim process. In that case, a creditor filed a proof of claim in the amount of $2,039.21. The debtors objected to the claim as inflated, and the bankruptcy court reduced the claim to $1,100. The debtors then brought a putative class action in federal district court contending that the creditor had violated the FDCPA by misrepresenting the amount of the debt that the debtors owed to the claimant.

The *Simmons* court held that an inflated proof of claim cannot serve as a basis for a claim under the FDCPA. The Second Circuit found that the majority of courts addressing the issue agree that the filing of even an invalid claim was not the "sort of abusive debt collection practice proscribed the FDCPA." *Simmons*, at 45. The Court found it illogical for the Bankruptcy Code to have a procedure that acknowledges the potential for wrongly filed claims but then have liability triggered by the FDCPA. "It is difficult for this Court to understand how a procedure outlined by the Bankruptcy Code could possibly form the basis of a violation under the FDCPA." *Id.* quoting *B-Real, LLC v. Rogers*, 405 B.R. 428, 431 (M.D. La. 2009). As stated in *Simmons*:

> The FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors. There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself.
>
> "The FDCPA ... was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 343 (7th Cir. 1997). "Debtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled. While

9

the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers." *B–Real,* 405 B.R. at 432 (footnote omitted)(internal quotation marks omitted). Thus debtors are protected in bankruptcy proceedings—and by discharge afterward.

622 F.3d at 95-96.

The *Simmons* court emphasized that the Bankruptcy Code provides remedies for improper proofs of claim (including claim disallowance and contempt) and concluded that Congress surely did not intend to allow debtors to bypass the bankruptcy process when it enacted the FDCPA. *Id.* Thus, *Simmons* found no place for collateral FDCPA causes of action, at least in the claims context, where Congress had so carefully put in place a procedure for dealing with all of a debtor's creditors — even ones with claims that could be disallowed.

The Eleventh Circuit created a split of authority last year when it issued its opinion in *Crawford,* finding that filing a proof of claim based on a stale debt violated the FDCPA.[5] *Crawford* relied heavily on the Seventh Circuit's decision in *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013), to conclude that if it violates the FDCPA to file a state court lawsuit to collect a time-barred debt, it equally violates the FDCPA to file a proof of claim regarding a time-barred debt. *Crawford* reasoned that, similar "to the filing of a stale lawsuit, a debt collector's filing of a time-barred proof of claim creates the misleading impression to the debtor that the debt collector can legally enforce the debt. The 'least sophisticated' Chapter 13 debtor may be unaware

---

[5] *Crawford* admittedly dodged the "preemption" issue of the FDCPA and the Bankruptcy Code, finding that because the defendant did not argue that the Bankruptcy Code displaces or preempts the FDCPA, the court need not address the issue. Instead, the issue addressed was only whether LVNV's conduct in filing a proof of claim in debtor's chapter 13 case on a stale debt violates the FDCPA.

that a claim is time barred and unenforceable and thus fail to object to such a claim." *Crawford* at 1261.

The *Phillips* decision, relied on so heavily by *Crawford*, found that the filing of a *lawsuit* to recover a stale debt was "unfair" under the FDCPA because (1) "few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts" and would therefore "unwittingly acquiesce to such lawsuits;" (2) "the passage of time ... dulls the consumer's memory of the circumstances and validity of the debt;" and (3) the delay in suing after the limitations period "heightens the probability that [the debtor] will no longer have personal records" about the debt. *Id.* at 1079 quoting *Kimber v. Federal Financial Corp.,* 668 F. Supp. 1480, 1487 (M.D. Ala. 1987).

The focus of *Phillips* was not so much about the outlawing of stale suits, although that was certainly one of its holdings, but about a class certification issue.[6] Nonetheless, the Seventh Circuit's holding that filing a *lawsuit* on stale debt violates the FDCPA is the lynchpin of *Crawford*'s holding that filing a proof of claim on a stale debt likewise violates the FDCPA:

> The same is true in the bankruptcy context. In bankruptcy, the limitations period provides a bright line for debt collectors and consumer debtors, signifying a time when the debtor's right to be free of stale claims comes to prevail over a creditor's right to legally enforce the debt. A Chapter 13 debtor's memory of a stale debt may have faded and personal records documenting the debt may have vanished, making it difficult for a consumer debtor to defend against the time-barred claim.
>
> Similar to the filing of a stale lawsuit, a debt collector's filing of a time-barred proof of claim creates the misleading impression to the debtor that the debt collector can legally enforce the debt. The "least sophisticated" Chapter 13 debtor may be

---

[6] The Seventh Circuit clarified in *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1020 (7th Cir. 2014) that it was not automatically improper for a debt collector to seek repayment on a stale debt noting that some debtors may feel it a moral obligation to repay, but affirming *Phillips*' holding that if a debt collector misleads a debtor into believing a debt is legally enforceable when it is not, then the FDCPA would be violated.

> unaware that a claim is time barred and unenforceable and thus
> fail to object to such a claim.

*Crawford*, 758 F.3d at 1261.

The *Crawford* court found that this misleading action on the part of a creditor could result in an unfair distribution of funds on an otherwise unenforceable debt and that requiring objections to such claims rather than making them actionable under the FDCPA was a waste of energy and resources. The creditor's actions were thus found to be "unfair," "unconscionable," "deceptive," and "misleading" within the broad scope of §1692e and §1692f. *Id.* In short, *Crawford* saw no distinction between the claims process in bankruptcy and state court litigation when it comes to the FDCPA.

The circuit level split highlights two different analytical frameworks. *Simmons* focuses on how the bankruptcy claims process has its own exclusive mechanism for dealing with unenforceable claims and effectively displaces any additional remedy that would otherwise arise out of the FDCPA. *Crawford* analogizes the filing of a proof of claim to the filing of a lawsuit in state court and concludes that either action by a creditor triggers the FDCPA.

This Court does not find either approach completely satisfactory. The Second Circuit approach in *Simmons* goes a bit too far – putting the emphasis on how the FDCPA can have no role in the bankruptcy claims process. *Crawford* likewise goes too far, ignoring the very serious distinctions between bankruptcy and other litigation. Neither approach puts the focus where the Supreme Court says it should be – on whether there is a way to limit the disharmony between the two laws and "give effect to both."

## D. Bankruptcy Compared to Collection Litigation

The primary flaw in the *Crawford* analysis is accepting, without much discussion, the idea that filing a proof of claim is deceptive and misleading to a

debtor in bankruptcy in the same way that filing a lawsuit over a stale debt is unfair to a defendant in state court. *Crawford* simply ignores the more nuanced nature of the bankruptcy process – not the least of which is that the focus of bankruptcy is to participate in a distribution from a bankruptcy estate rather than to collect personally from a debtor.

The *Phillips* approach places a heavy emphasis on the "unfairness" arising in a state court collection matter when a cause of action is time-barred, even if there are no inaccurate statements in the complaint. It is interesting to hypothesize the reaction a court might have in a different scenario. It is doubtful that most courts would say that a plaintiff was being "deceptive" in making totally accurate allegations in a malpractice lawsuit merely because the defendant doctor has a valid statute of limitations defense. It is unlikely that most courts would consider it "misleading" to file a products liability lawsuit with factually accurate assertions against a manufacturer solely on the basis that the defendant can raise a statute of limitations defense.

The justifications for treating a stale claim as deceptive, misleading, and unfair — and thus triggering the FDCPA in a collection lawsuit brought by a creditor against a debtor – are largely based on the nature of the proceedings and the inherent disparity between the power and positions of the parties. Those factors have convinced many courts to find FDCPA violations involving stale collection lawsuits even if there are no actual misrepresentations in the text of the complaint or other grounds to invoke the FDCPA.

The *Phillips* approach has resulted in some courts applying an understandable, and perhaps even laudable, reading of the FDCPA to find an "implied" misrepresentation based on the applicability of a statute of limitations to a factually accurate state court complaint. Given the concern expressed by some courts about the inherent unfairness in the state collection litigation process, the FDCPA has sometimes been interpreted in the stale

13

debt setting in an even more expansive manner than occurs in other fact scenarios involving the FDCPA. This Court can still give effect to a generally broad reading of the FDCPA without establishing a totally different standard in the bankruptcy setting. However, the FDCPA should not be read so expansively in the "stale debt" proof of claim context that it creates unnecessary tension with the bankruptcy system. The *Crawford* thought process does just that – analogizing proofs of claim with collection lawsuits and then concluding as a matter of law that there is a violation of the FDCPA based solely on an implied misrepresentation in the proof of claim.

The nature of the proceedings in bankruptcy is quite different from state collection litigation, and there is not the same level of disparity in the roles of the parties in the bankruptcy setting to justify the same expansive interpretation that has been used in connection with stale debts in state court litigation.

Critical differences between state court collection litigation and the bankruptcy claim process include: (1) bankruptcy debtors enjoy the protections of the automatic stay; (2) after a bankruptcy case, bankruptcy debtors are protected by a discharge; (3) in bankruptcy, debtors choose the forum and then, at least in some sense, invite participation of claimholders, and (4) the bankruptcy process is governed by strict rules under the supervision of the courts, the case trustee, and the United States Trustee. Understanding these distinctions is critical to appreciate why *Crawford* was misguided in relying so heavily on the *Phillips* decision.

### 1. Special Protections Afforded Bankruptcy Debtors

#### a. The Automatic Stay

At the commencement of a bankruptcy case, the bankruptcy estate, consisting of "all legal or equitable interests of the debtor in property," is created, 11 U.S.C. § 541(a)(1) (2006), and, in most cases, the protections of the

automatic stay go into effect, prohibiting actions against debtors, property of debtors, and property of the estate, including "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(6).

"The scope of the stay is broad and its protections "automatic and mandatory with the filing of the bankruptcy petition" in order to protect debtors and creditors alike, and it applies to all debts, even those "that will ultimately be excepted from discharge, since one of the fundamental purposes of the automatic stay is to give the [debtor] 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Waldo*, 417 B.R. 854, 888 (Bankr. E.D. Tenn. 2009).

In other words, upon the filing of a bankruptcy petition, the debtor is given the extraordinary protection of an injunction against all creditors. This protection is unique to bankruptcy and certainly not present in a creditor-initiated collection lawsuit where a debtor must respond on a deadline to a lawsuit on a debt that might be long forgotten.

Outside of bankruptcy, a creditor is permitted, with limitations, to pursue the collection of even a stale debt.[7] Inside bankruptcy, the typical creditor can do virtually nothing without violating the automatic stay – other

---

[7] See *Buchanan v. Northland Group, Inc.* 776 F.3d 393, 396-97 (6th Cir. 2015) (applying Michigan law but recognizing most states have the same law):

> [A] debt remains a debt even after the statute of limitations has run on enforcing it in court. As a result, when the six-year limitations period ran on Buchanan's debt that meant only that the creditor—LVNV today—could not enforce the debt in court without facing a complete legal defense to it. Legal defenses are not moral defenses, however. And a creditor remains free, in the absence of a bankruptcy order or something comparable *preventing* it from trying to collect the debt, to let the debtor know what the debt is and to ask her to pay it. There thus is nothing wrong with informing debtors that a debt remains unpaid or for that matter allowing them to satisfy the debt at a discount. For some individuals, such letters may offer a welcome solution to an outstanding debt.

than to file a proof of claim and hope to share in a distribution to all creditors. The existence of the automatic stay creates a much more level playing field and provides protections that do not exist in traditional state court litigation.

### b. The Bankruptcy Discharge

Once a discharge is granted, the automatic stay terminates and is replaced by the discharge injunction, which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2) (2006); *In re Jenkins,* 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005). The bankruptcy discharge is matchless in the legal world, and its protections are *broader* than the FDCPA for a bankruptcy debtor. For example the Sixth Circuit has said that a creditor can ask a debtor to pay a stale a debt as long as no litigation is threatened or commenced. *Buchanan v. Northland Group, Inc.* 776 F.3d 393. Upon entry of a bankruptcy discharge, if the creditor's claim is scheduled, disallowed, or allowed and treated in the chapter 13 plan even at 0%, that debt is discharged. At that point, the discharge injunction prevents a creditor from even asking to be paid, a protection broader than that provided by the FDCPA. There are no comparable protections for a consumer sued in state court on a stale debt.

### 2. Unique Nature of the Claims Process

In return for the "injunctive breathing spell" provided by the automatic stay and the ultimate discharge the debtor may receive, the Bankruptcy Code sets up an intricate system to allow any entity holding a "claim" against the debtor to participate in the bankruptcy process to have the claim adjudicated. "The United States Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights." *Eastern Equipment & Services Corp. v. Factory Point*

*Nat. Bank of Bennington*, 236 F.3d 117, 121 (2ᵈ Cir. 2001). It is an inclusive system designed not just to protect the debtor who has the benefit of the automatic stay, but also creditors to provide for equal treatment. *Davison v. Kanipe*, 410 B.R. 607, 610 (Bankr. E.D. Tenn. 2009).

Under the Bankruptcy Code, 11 U.S.C. § 501(a) provides that a creditor "may file a proof of claim." A claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Fed. R. Bankr. P. 3001(f) states: "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." If the debtor or trustee objects to a claim and is successful, the claim will be disallowed. One of the specifically enumerated reasons for claim disallowance in § 502(b)(1) is where the "claim is unenforceable against the debtor ...." In other words, the Code provides a mechanism for dealing with unenforceable claims against the debtor's estate and has procedures in place to disallow them. Of course, the fact that there is a disallowance process built into the bankruptcy claims system does not necessarily mean that other sanctions, such as those included in the FDCPA, could not also apply, but the bankruptcy claims process creates a layer of protection that does not exist in most state court collection litigation.

A "claim" is defined broadly in the Bankruptcy Code as a "right to payment, whether or not such right is ... disputed ..." 11 U.S.C. § 101(5). Under the Bankruptcy Code, any creditor may file a proof of claim, even for a disputed claim, and it is the trustee or debtor's right to object to such claims under 11 U.S.C. § 502(b). Even if a claim is unenforceable, a debtor may want to list it in the bankruptcy filings to ensure it is covered by the discharge. In fact, bankruptcy law is so unusual in the claims process — and so unlike state collection litigation — that a debtor in bankruptcy can file a proof of claim on behalf of a creditor pursuant to Federal Rule of Bankruptcy Procedure 3004, and then object to that same claim and have it disallowed.

*Crawford* worried that a "Chapter 13 debtor's memory of a stale debt may have faded and personal records documenting the debt may have vanished, making it difficult for a consumer debtor to defend against the time-barred claim." *Crawford*, at 1260. This is a legitimate concern in a creditor-filed lawsuit in state court but is largely inapplicable in bankruptcy court. Federal Rule of Bankruptcy Procedure 3001(c)(3)(A)(i)-(v) requires a claimholder based on an Open-End or Revolving Consumer Credit Agreement to include the following information *in* the proof of claim:

> **(i)** the name of the entity from whom the creditor purchased the account;
>
> **(ii)** the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
>
> **(iii)** the date of an account holder's last transaction;
>
> **(iv)** the date of the last payment on the account; and
>
> **(v)** the date on which the account was charged to profit and loss.

Fed. R. Bankr. P. 3001(c)(3)(A). Moreover, subsection (B) allows any party in interest to request further documentation. This consumer-protection provision highlights further how the claims process in bankruptcy is highly regulated, controlled, and different from state court collections actions.

In the specific context of chapter 13, where a debtor chooses to repay creditors through a plan, creditors must file a proof of claim to participate in distributions. *See Fed.R.Bankr.P 3002(a)* ("An unsecured creditor or an equity security holder must file a proof of claim for the claim or interest to be allowed…"). The process established by Congress contemplates that debtors will have the opportunity to review claims and object to any that should not be paid, including those that are time-barred.

18

### 3. The Debtor-Initiated Forum

Filing a bankruptcy proof of claim also does not equate to a state court lawsuit due to the simple fact that it is the debtor that starts the process, not the creditor, and then the procedures and incentives work quite differently from state court. *See In re LaGrone*, 525 B.R. 419, 426-27 (Bankr. N.D. Ill., 2015).

In collection lawsuits, debtors must affirmatively assert the statute of limitations in an answer, but bankruptcy debtors have the benefit of a trustee who may examine and object to proofs of claims. Depending on the type of bankruptcy, a debtor may have less personal interest in the allowance or disallowance of a proof of claim. In fact, a typical Chapter 7 debtor does not even have standing to object to a proof of claim, whereas a Chapter 13 debtor will often be more directly affected by the allowance of an unexpected claim.

When a creditor provides the required information in a proof of claim, and if that information is accurate, the debtor is ordinarily in a superior position compared to state court collection litigation where "notice pleading" is often all that is required.

The very nature of the process is geared toward participation in the distribution of the bankruptcy estate rather than collecting personally against the debtor. *In re McMillen*, 440 B.R. 907 (Bankr. N.D. Ga. 2010) ("Filing of a proof of claim is a request to participate in the distribution of the bankruptcy estate under court control."); *In re Humes*, 496 B.R. 557 (Bankr. E.D. Ark. 2013) (same); *In re Mallard*, 2014 WL 988779 (Bankr. E.D. Ky. Mar. 12, 2014) ("Filing a proof of claim is not a demand for payment from a debtor. At most, it is a request to participate in the claims allowance process of the debtor's estate. 11 U.S.C. §§ 502, 1306, 1326.").

19

## 4. Involvement of Trustee

In addition to the other protections, the debtor in bankruptcy also receives the oversight of a trustee:

> [o]nce a consumer files for Chapter 13 bankruptcy, a trustee is appointed. *See* 11 U.S.C. § 1302(a) (incorporating statutory duties for trustee under §§ 704(a)(2)-(7) and (a)(9)). Among other things, the "trustee *shall* ... if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(5) ... Not only does the trustee provide a safeguard for the debtor—a safeguard not present in a state court suit to collect a time-barred debt—but in this case, the [debtors] were represented by counsel during their bankruptcy proceeding who could similarly safeguard them against any misleading impression a proof of claim regarding a time-barred debt could cause.

*Elliot v. Cavalry Invs., LLC*, 2015 WL 133745, *5 (S.D. Ind. Jan. 9, 2015).

The shelter of the automatic stay, discharge injunction, statutory claims process, and trustee oversight creates a dynamic that simply cannot be duplicated outside of bankruptcy. This Court does not conclude, as some courts have, that these various distinctions are sufficient to find that the FDCPA is totally preempted by the Bankruptcy Code in the claims process. However, they are further indications that it is overly simplistic to find, as *Crawford* did, that the filing of a proof of claim is the equivalent of filing a state court collection lawsuit.

## E. Extinguishing Right to Payment Versus Remedy

Many courts, including the Seventh Circuit in *Phillips* that was relied upon so heavily in *Crawford*, have found that any collection *lawsuit* on a stale claim can be misleading. However, it is important to note the distinction between extinguishing the right to payment as opposed to the remedies that can be pursued. The Tennessee statute of limitations on collection of a debt does not extinguish a creditor's rights in the debt, only the remedy. *Jones v. Methodist Healthcare*, 83 S.W.3d 739 (Tenn. Ct. App. 2001). As the court

there explained, "[s]tatutes of repose are substantive and extinguish both the right and the remedy while statutes of limitation are procedural, extinguishing only the remedy." *Id.* at 743.

Under Tennessee law, a statute of limitations defeats "simply the remedies upon a debt" but "does not operate, in law, as a discharge of the debt itself, which remains." *Connecticut Mut. Life Ins. Co. v. Dunscomb*, 69 S.W. 345, 346 (Tenn. 1902).[8]  The distinction takes on a special significance in bankruptcy where the goal of a creditor is to share in funds among other creditors rather than to collect personally from the debtor.  Indeed, it is possible that a debtor could in some circumstances want to have a stale debt paid.

For example, if the debtor's parents are also obligated on a debt, the debtor might want to see a creditor paid, particularly if the statute of limitations has not run on the parents' guaranty even though there was arguably a statute of limitations defense for the debtor.  Although there might be a valid objection that could be filed to the bankruptcy claim, the debt still legally exists and the creditor could share in the bankruptcy distribution if no one objects and the claim is allowed.  That is a far different situation from the creditor filing a lawsuit to collect from the debtor in state court.

### F. Maximum Effect to Both Laws

The goal is, as it should be, to give maximum effect to both the Bankruptcy Code and the FDCPA.  A needlessly unrestrained reading of the FDCPA in the bankruptcy claims context accentuates inconsistencies in the statutory language that can be averted and creates tension between the FDCPA and the Bankruptcy Code that can be avoided.

---

[8] From this Court's research, this is the law in almost all fifty states, save Mississippi (MS Code Ann. § 15-1-3 extinguishes the remedy and the right), Wisconsin (*Dankin v. Marciniak*, 695 N.W.2d 867 (Wisc. Ct. App. 2005)), and a few others where the law is not clear cut.

Using an unnecessarily sweeping interpretation of the FDCPA to find even an accurate proof of claim, albeit based on a stale debt, to be a violation of the FDCPA runs counter to the Supreme Court's "cardinal principle of construction" to give effect to both laws.[9] However, finding that the bankruptcy claims process is so contradictory to the FDCPA protections that the FDCPA must be essentially ignored in every bankruptcy situation likewise violates that important principle.

Thus, this Court rejects the holding in *Crawford* and finds that not every filing of a proof of claim on a stale claim is automatically a violation of the FDCPA. However, going to the other extreme and finding, as *Simmons* did, that the laws are so inconsistent that the FDCPA can never be applied in the bankruptcy claims setting would be just as contrary to the goal of making the two laws work together to the extent possible.

---

[9] For example, an overly expansive reading makes the venue provisions of both laws untenable. Adopting the *Crawford* approach creates an arguably inherent contradiction within the FDCPA itself. Section 1692i of the FDCPA requires that any debt collector who brings any "legal action" on a debt against a consumer must do so in a specified venue. Such collection actions must be pursued where the property is located if it involves real estate. Otherwise, it must be filed where the consumer signed the relevant contract or where the consumer resides.

If the Eleventh Circuit is correct that filing a proof of claim is the equivalent of filing a lawsuit in state court, it follows that filing any proof of claim should also be construed as a "legal action" within the meaning of the venue provision in Section1692i. However, there is an obvious problem with that. Proofs of claim must be filed in the court where the bankruptcy is pending. That is not necessarily where the debtor currently resides, and it is frequently not where real estate is located or contracts were executed that are the subject of proofs of claim.

Thus, there is an arguable breakdown in the logic of *Crawford* if it is carried to its ultimate conclusion: (a) proofs of claim are essentially identical to collection lawsuits, (b) collection lawsuits must be filed in limited venues, so (c) to comply with the venue provision and avoid violating the FDCPA, proofs of claim would often have to be filed in a location different from where the bankruptcy is pending. The logic of *Crawford* would create an untenable situation. The Bankruptcy Code requires that proofs of claim be filed where the bankruptcy case is pending, but the FDCPA would dictate that proofs of claim would sometimes have to be filed elsewhere.

## CONCLUSION

The only approach that seems to maximize the effect of both the Bankruptcy Code and the FDCPA is to limit the circumstances when the FDCPA can be invoked in the bankruptcy proof of claim context. The FDCPA should not be implicated with regard to stale debts when a creditor merely (a) files an accurate proof of claim in a bankruptcy case, (b) when the proof of claim includes all the required information including the timing of the debt, (c) the applicable statute of limitations is one that does not extinguish the right to collect the debt but merely limits the remedies, and (d) no legal impediment to collection or factual circumstances exist that would invoke the FDCPA other than merely the applicability of a statute of limitations.

Triggering the FDCPA based on "implied" deception solely because of the applicability of a statute of limitations simply creates an unnecessary disharmony in the two statutory schemes.

The pending cases do not include situations where additional factual or legal circumstances have been alleged that would cause the FDCPA to apply. The parties appear to have intentionally presented the cross-summary judgment motions with the fairly straight-forward factual scenario of an admittedly accurate proof of claim based on an unquestionably time-barred debt with no other substantive extraneous facts to muddy the waters.

There could be an argument for avoiding all potential confusion in the bankruptcy process by having bankruptcy-related activity totally exempt from the FDCPA – as some courts have found. Likewise, there may be good reason to make it clear that knowingly filing even an accurate but stale proof of claim triggers FDCPA sanctions as a matter of law, in addition to any remedies the Bankruptcy Code may provide. Those are decisions appropriate for Congress, not this Court. Until there is legislative guidance on that point, this Court's job is to attempt to give maximum effect to both laws.

The byproduct of drawing the line where the Court has drawn it is that cases of this type will generally be very fact-specific. The outcome of each case will be dependent on exactly what information is included or not included in the proof of claim, the accuracy of that information, what state law applies, and any other facts or circumstances relevant to the FDCPA beyond the mere applicability of a statute of limitations.

In these particular consolidated adversary proceedings, it appears that all the cases have roughly the same fact scenario as the lead *Broadrick* case.[10]

---

[10] The undisputed facts for each of the other adversary proceedings are as follows:

A. *Weston v. Resurgent Capital Services, L.P. (In re Weston)* 14-90362
On August 23, 2013, proof of claim number 3 (the "*Weston Claim*") was filed in Weston's bankruptcy case. (*Id.* at ¶ 18.) The Weston Claim asserts a claim in the amount of $854.42 arising from an obligation of Weston to MCI Communications Services, Inc. (*Id.* at ¶ 19.) The Weston Claim provides that the last payment date and last transaction date were June 6, 2004 (Stip. of Facts, ¶ 21).

B. *Duke v. Resurgent Capital Services, L.P. (In re Duke)* 14-90429
On April 22, 2014, proof of claim number 14 (the "*Duke Claim*") was filed in Duke's bankruptcy case. (*Id.* at ¶ 31.) The Duke Claim asserts a claim against Duke's estate in the amount of $610.66 arising from an obligation of Duke to Friedman's Jewelers. (*Id.* at ¶ 32.) The Duke Claims provides that the last payment date and last transaction date were July 26, 2002 (Stip. of Facts, ¶ 34).

C. *Allison v. LVNV Funding, LLC (In re Allison)* 14-90450
On August 7, 2014, proof of claim number 2 (the "*Allison Claim*") was filed in Allison's bankruptcy case. (*Id.* at ¶ 44.) The Allison Claim asserts a claim against Allison's estate in the amount of $578.06 arising from an obligation of Allison to First Premier Bank. (*Id.* at ¶ 45.) The Allison Claim provides that the last payment date and last transaction date were November 30, 2001 (Stip. of Facts, ¶ 47).

D. *Nance v. PYOD, LLC (In re Nance)* 14-90453
On September 29, 2014, proof of claim number 8 (the "*Nance Claim*") was filed in Nance's bankruptcy case. (*Id.* at ¶ 59.) The Nance Claim asserts a claim against Nance's estate in the amount of $8,762.43 arising from an obligation of Nance to First USA Bank, N.A. (*Id.* at ¶ 60.) The Nance Claim provides that the account underlying the Nance Claims was charged off on June 1, 1999 (Stip. of Facts, ¶ 62).

E. *Milton v. LVNV Funding, LLC (In re Milton)* 14-90454
On August 6, 2014, proof of claim number 3 (the "*Milton Claim*") was filed in Milton's bankruptcy case. (*Id.* at ¶ 74.) The Milton Claim asserts a claim against Milton's estate in the amount of $6,445.33 arising from an obligation of Milton to CitiFinancial, Inc. (*Id.* at ¶ 75.)

The Milton Claims provides that the last payment date and last transaction date were October 8, 2002 (Stip. of Facts, ¶ 77).

F. *Brooks v. Resurgent Capital Services, L.P. (In re Brooks) 14-90458*

On July 31, 2014 proof of claim number 15 ("*Brooks Claim 15*") and proof of claim number 16 ("*Brooks Claim 16*") (collectively, the "*Brooks Claims*") were filed in Brooks' bankruptcy case. (*Id.* at ¶ 89.) Brooks Claim 15 asserts a claim against Brooks' estate in the amount of $1,172.93 arising from an obligation of Brooks to MBNA. (*Id.* at ¶ 90.) Brooks Claim 16 asserts a claim against Brooks' estate in the amount of $1,228.33 arising from an obligation of Brooks to MBNA. (*Id.* at ¶ 91.) Brooks Claim 15 provides that the last payment date and last transaction date were April 23, 2003 (Stip. of Facts, ¶ 93). Brooks Claim 16 provides that the account underlying Brooks Claim 16 was charged off on February 27, 2001 (Stip. of Facts, ¶ 94).

G. *Merritt-Ward v. LVNV Funding, LLC (In re Merritt-Ward) 14-90471*

On September 9, 2014, proof of claim number 7 (the "*Merritt-Ward Claim*") was filed in Merritt-Ward's bankruptcy case. (*Id.* at ¶ 109.) The Merritt-Ward Claim asserts a claim against Merritt-Ward's estate in the amount of $498.83 arising from an obligation of Merritt-Ward to Capital One Bank (USA), N.A. (*Id.* at ¶ 110.) The Merritt-Ward Claim provides that the account underlying the Merritt-Ward Claim was charged off on November 18, 2000 (Stip. of Facts, ¶ 112).

H. *Anderson v. LVNV Funding, LLC (In re Anderson) 14-90473*

On August 8, 2014, proof of claim number 19 (the "*Anderson Claim*") was filed in Anderson's bankruptcy case. (*Id.* at ¶ 124.) The Anderson Claim asserts a claim against Anderson's estate in the amount of $2,553.72 arising from an obligation of Anderson to Sears National Bank. (*Id.* at ¶ 125.) The Anderson Claim provides that the account underlying the Anderson Claim was charged off on November 30, 1998 (Stip. of Facts, ¶ 127).

I. *Awonuga v. LVNV Funding, LLC (In re Awonuga) 14-90484*

On August 13, 2014, proof of claim number 4 ("*Awonuga Claim 4*") and proof of claim number 5 ("*Awonuga Claim 5*") (collectively, the "*Awonuga Claims*") were filed in Awonuga's bankruptcy case. (*Id.* at ¶ 139.) Awonuga Claim 4 asserts a claim against Awonuga's estate in the amount of $571.87 arising from an obligation of Awonuga to Capital One Bank (USA), N.A. (*Id.* at ¶ 140.) Awonuga Claim 5 asserts a claim against Awonuga's estate in the amount of $826.69 arising from an obligation of Awonuga to General Electric Capital Corporation. (*Id.* at ¶ 141.) Awonuga Claim 4 provides that the last payment date and last transaction date were March 3, 2005 (Stip. of Facts, ¶ 143). Awonuga Claim 5 provides that the account underlying Awonuga Claim 5 was charged off on December 9, 2005 (Stip. of Facts, ¶ 144).

J. *Williams v. LVNV Funding, LLC (In re Williams) 14-90492*

On September 16, 2014, proof of claim number 2 (the "*Williams Claim*") was filed in Williams' bankruptcy case. (*Id.* at ¶ 156.) The Williams Claim asserts a claim against Williams' estate in the amount of $414.12 arising from an obligation of Williams to First Premier Bank, but Williams disagrees with this amount. (*Id.* at ¶ 157.) The Williams Claim provides that the last payment date and last transaction date were May 14, 2006 (Stip. of Facts, ¶ 159).

K. *Cook v. LVNV Funding, LLC (In re Cook) 14-90540*

On September 15, 2014, proof of claim number 12 (the "*Cook Claim*") was filed in Cook's bankruptcy case. (*Id.* at ¶ 171.) The Cook Claim asserts a claim against Cook's estate in the

There seem to be no real disputes about any of the facts that would be relevant to this Court's analysis of the cases.

Based on the stipulations, it appears that no plaintiff is contesting the accuracy of the information provided in the proofs of claim that would be relevant to the statute of limitations issue (such as date of the last transaction, date of last payment, date of charge off, etc.) The parties also appear, from all pleadings and argument of counsel, to be in agreement that the applicable statute of limitations expired prior to bankruptcy in each adversary proceeding.

There were no stipulations as to which state law applies in regard to each claim. However, since there are very few states where the statute of limitations extinguishes both the remedy and the underlying debt, and since

amount of $445.10 arising from an obligation of Cook to First Premier Bank, (*Id.* at ¶ 172.) but Cook disagrees with this amount. The Cook Claim provides that the last payment date and last transaction date were April 16, 2004 (Stip. of Facts, ¶ 174).

L. *Harmon v. LVNV Funding, LLC (In re Harmon) 14-90541*
On September 12, 2014, proof of claim number 9 (the "*Harmon Claim*") was filed in Harmon's bankruptcy case. (*Id.* at ¶ 186.) The Harmon Claim asserts a claim against Harmon's estate in the amount of $728.39 arising from an obligation of Harmon to Capital One Bank (USA), N.A. (*Id.* at ¶ 187.) The Harmon Claim provides that the last payment date and last transaction date were on July 7, 2007 (Stip. of Facts, ¶ 189).

M. *Lamar-Johnson v. LVNV Funding, LLC (In re Lamar-Johnson) 14-90542*
On September 12, 2014, proof of claim number 28 (the "*Lamar-Johnson Claim*") was filed in Lamar-Johnson's bankruptcy case. (*Id.* at ¶ 201.) The Lamar-Johnson Claim asserts a claim against Lamar-Johnson's estate in the amount of $411.87 arising from an obligation of Lamar-Johnson to First Premier Bank. (*Id.* at ¶ 202.) The Lamar-Johnson Claim provides that the last payment date and last transaction date were October 25, 2000 (Stip. of Facts, ¶ 204).

N. *Hughes, Jr. v. LVNV Funding, LLC (In re Hughes, Jr.) 14-90551*
On September 5, 2014, proof of claim number 15 ("*Hughes Claim 15*") and proof of claim 16 ("*Hughes Claim 16*") (collectively, the "*Hughes Claims*") were filed in Hughes' bankruptcy case. (*Id.* at ¶¶ 216, 218.) Hughes Claim 15 asserts a claim against Hughes' estate in the amount of $7,150.68 arising from an obligation of Hughes to CitiFinancial Auto Corporation, (*Id.* at ¶ 217.) but Hughes disagrees with this amount. Hughes Claim 16 asserts a claim against Hughes' estate in the amount of $457.02 arising from an obligation of Hughes to First Premier Bank, (*Id.* at ¶ 219.) but Hughes disagrees with this amount. Hughes Claim 15 provides that the last payment date and last transaction date were July 28, 2000 (Stip. of Facts, ¶ 221). Hughes Claim 16 provides that the last payment date and last transaction date were June 27, 2004 (Stip. of Facts, ¶ 222).

no plaintiff raised that as a distinction relevant in these cases, the Court assumes that state law extinguishes only the remedy in each of these adversary proceedings.

No other special circumstances have been asserted for purposes of the cross-summary judgment motions. Therefore, it appears that all the parameters established by the Court herein have been satisfied for a determination that the FDCPA does not apply. However, in light of the number of cases consolidated for hearing and the possibility that there could be distinguishing factors in some particular cases that take them outside the *Broadrick* scenario, the Court will establish a procedure for addressing any outliers that need special attention.

Unless a plaintiff files a notice within 10 days of the entry of this opinion asserting that there remains a genuine issue as to any of the material facts notwithstanding this Court's decision or that there are special factual circumstances or applicable state law dictating a different result, the Court will enter an order dismissing each of the adversary proceedings. If such notice is given, then the Court will set such matter for a new pretrial conference.

Finally, to the extent that any complaint included a request to disallow the claim that is barred by the statute of limitations, no genuine issue as to any material fact remains on that question. As a matter of law, based on the stipulated facts, any such claim in any of these adversary proceedings must be disallowed. Any plaintiff that included claim disallowance as part of the request for relief may submit an order in the main bankruptcy case disallowing the claim.

It is so ordered.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.